RECEIVED
SDNY PRO SE OFFICE
2026 JUN -9  AM 9: 59

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

CAMICA ALLEY, individually and as parent and natural guardian of her minor children S.A. and A.B-A.,

Plaintiffs,

v.

CITY OF NEW YORK;

JOHN/JANE DOE NYPD OFFICERS 1–10;                    25-CV-10346

JOHN DOE EMS PERSONNEL 1–5;

JOHN/JANE DOE ACS WORKERS 1–5;

JOHN/JANE DOE SHERIFF'S DEPUTIES 1–10,

Defendants.

AMENDED COMPLAINT

**42 U.S.C. § 1983 – CIVIL RIGHTS VIOLATIONS**

1

JURISDICTION & VENUE

1. This action arises under the Constitution and laws of the United States, including **42 U.S.C. § 1983**, which provides a civil remedy for the deprivation of rights secured by the Constitution and federal law.
2. This Court has **subject-matter jurisdiction** pursuant to **28 U.S.C. §§ 1331 and 1343**, because Plaintiffs allege violations of their rights under the **First, Fourth, and Fourteenth Amendments** to the United States Constitution.
3. This Court has **supplemental jurisdiction** over Plaintiffs' related state-law claims under **28 U.S.C. § 1367**, because those claims arise from the same events and form part of the same case or controversy.
4. Venue is proper in the **Southern District of New York** under **28 U.S.C. § 1391(b)** because a substantial part of the events and omissions giving rise to these claims occurred within this District, including the unlawful entry, false arrest, excessive force, retaliatory arrests, removal of the minor Plaintiffs, and subsequent due-process violations.

PARTIES

1.Plaintiff Camica Alley is an adult resident of New York County and the mother and natural guardian of minor children S.A. and A.B-A. Plaintiff brings this action individually and on behalf of her minor children, each of whom suffered direct constitutional, emotional, psychological, educational, and family-integrity injuries as a result of Defendants' actions.

2.Plaintiff S.A. is a minor child who suffered emotional trauma, psychological harm, educational disruption, and deprivation of family integrity due to Defendants' conduct. Plaintiff Alley brings these claims on S.A.'s behalf.

3..Plaintiff A.B-A. is a minor child who suffered emotional trauma, psychological harm, educational disruption, and deprivation of family integrity due to Defendants' conduct. Plaintiff Alley brings these claims on A.B-A.'s behalf.

4.Defendant City of New York is a municipal corporation responsible for the policies, practices, supervision, training, and conduct of the New York City Police Department ("NYPD"), the Administration for Children's Services

2

("ACS"), the New York City Sheriff's Office, Emergency Medical Services ("EMS"), and contracted foster-care agencies including Graham Windham.

5.Defendants John/Jane Doe NYPD Officers 1–10 are unidentified officers of the NYPD 24ᵗʰ Precinct who participated in the unlawful entry, arrest, excessive force, public exposure, and malicious prosecution of Plaintiff Alley.

6.Defendants John Doe EMS Personnel 1–5 are unidentified EMS workers who attempted to forcibly inject Plaintiff Alley with an unknown chemical substance without medical justification or consent.

7.Defendants John/Jane Doe ACS Workers 1–5 are unidentified ACS employees who escalated the December 17, 2022 incident, failed to investigate Plaintiff's report of assault, removed the minor Plaintiffs without a court order or exigent circumstances, and deprived Plaintiffs of due process.

8.Defendants John/Jane Doe Sheriff's Deputies 1–10 are unidentified members of the New York City Sheriff's Office who participated in the July 2023 arrest of Plaintiff Alley, contributing to the ongoing pattern of harassment, intimidation, and retaliation.

9.Plaintiffs will amend this Complaint to substitute the true names of the John and Jane Doe defendants once their identities are revealed through a Valentin Order and discovery.

INABILITY TO IDENTIFY DEFENDANTS DUE TO CITY ERRORS

    a. Plaintiffs are presently unable to identify the full names and shield numbers of the NYPD officers, EMS personnel, ACS workers, and Sheriff's deputies involved in the incidents described in this Complaint because Defendants have withheld, misrepresented, or failed to provide accurate identifying information.

    b. On May 8, 2024, the City represented to the Court that it had identified the officers involved. However, the City's identification was based on the wrong incident date and the wrong incident address,

rendering the information false, unusable, and non-compliant with the Court's Valentin obligations.

c. During that same court appearance, Plaintiff Alley informed the Court that the City had listed the wrong address (720 Broadway instead of 2720 Broadway) and the wrong date (September 5 instead of December 17). These inaccuracies made it impossible for Plaintiff to rely on the City's purported identification.

d. After Plaintiff corrected the record in open court, the City failed to provide any corrected identification and instead produced only HIPAA releases, which did not contain the names of the involved personnel and did not satisfy the City's duty to identify the defendants.

e. Plaintiffs allege that the City's use of incorrect dates, incorrect addresses, and incomplete disclosures is part of a broader pattern of administrative obstruction that has delayed Plaintiffs' ability to seek redress and prolonged the separation and harm suffered by the minor Plaintiffs.

f. Plaintiffs will amend this Complaint to substitute the true names of the John and Jane Doe defendants once their identities are revealed through a Valentin Order, discovery, or other court-ordered disclosures.

## FACTUAL ALLEGATIONS

1. On December 17, 2022, Plaintiff was at home with her children, who were recovering from illness.

4

2. ACS arrived at Plaintiff's apartment door and began knocking aggressively.

3. Unsure who was outside and with her hands in water, Plaintiff instructed her young son to call 911.

4. Plaintiff remained on the phone with emergency services as ACS continued the encounter at the door.

5. NYPD officers arrived shortly thereafter while Plaintiff was still on the 911 call.

6. ACS and NYPD escalated the encounter at Plaintiff's home despite Plaintiff's ongoing communication with emergency services and despite Plaintiff having committed no crime, posed no danger, and being inside her residence with her children.

7. ACS and NYPD entered Plaintiff's home without lawful justification.

8. Following the entry, Plaintiff's children were removed from the home without a valid legal basis, causing severe emotional, physical, and financial harm to Plaintiff and her family.

9. From December 17, 2022 through the present day, Plaintiff has endured continuous harm caused by the actions of City agencies. This includes the July 2023 arrest by the New York City Sheriff's Office, which lacked lawful basis and further contributed to the ongoing trauma. As of 2026—more than three years later—Plaintiff's children still have not been returned to her, demonstrating the prolonged and continuing nature of the constitutional violations.

10. These incidents collectively demonstrate a pattern of unlawful    conduct by City agencies that resulted in significant violations of Plaintiff's constitutional rights.


SYSTEMIC PATTERN OF DUE PROCESS VIOLATIONS ACROSS MULTIPLE AGENCIES


11. The constitutional violations in this case were not isolated to the NYPD. Plaintiff was subjected to a coordinated pattern of misconduct involving ACS, EMS personnel, the New York City Sheriff's Office, and the foster-care agency Graham Windham, all acting jointly under color of state law.

12. ACS workers escalated the December 17, 2022 incident, ignored Plaintiff's report that she had been assaulted by an ACS employee, and later initiated

or contributed to proceedings that resulted in the wrongful removal of Plaintiff's children. ACS repeatedly relied on false information, incorrect dates, incorrect addresses, and misleading statements, depriving Plaintiff of procedural due process.

13. The New York City Sheriff's Office later participated in the July 2023 arrest, contributing to the ongoing pattern of harassment, intimidation, and retaliation against Plaintiff.

14. Graham Windham, the foster-care agency contracted by ACS to manage Plaintiff's children's placement, also participated in the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment. Although ACS generated case reports, Graham Windham was responsible for notifying Plaintiff of conferences, service-plan meetings, and permanency-related proceedings. Graham Windham failed to notify Plaintiff of any such meetings, excluding her entirely from the process and denying her a meaningful opportunity to be heard.

15. When the Termination of Parental Rights (TPR) petition was filed, a Graham Windham worker attempted "service" by placing sticky notes on Plaintiff's door while deliberately blocking her Ring camera, preventing her from receiving actual notice. Plaintiff was never personally served and never mailed proper notice.

16. These actions demonstrate that the violations of Plaintiff's rights were not isolated mistakes but part of a broader pattern of coordinated misconduct by multiple City agencies and contracted providers. This systemic failure deprived Plaintiff of her rights to family integrity, bodily integrity, and procedural due process under the Fourteenth Amendment.

17. .Plaintiff also received defective and inconsistent notices that failed to provide proper legal notice of the proceedings. These notices did not meet due-process requirements and deprived Plaintiff of adequate and timely notice as required by the Fourteenth Amendment.

18. Following the December 17, 2022 removal, ACS and Graham Windham withheld all meaningful information regarding the children's location, safety, and placement. Plaintiff was intentionally kept uninformed and was not told where her children had been taken.

19. It was later revealed that ACS had transported the children out of state to New Jersey and placed them with the deceased father's ex-wife—a person with whom Plaintiff and the children had no relationship, no prior contact, and no established bond. ACS never provided proper notice, justification, or explanation for this out-of-state placement. Plaintiff was never consulted regarding placement options, despite being the custodial parent and despite no court order authorizing removal or out-of-state placement.

20. ACS further restricted Plaintiff's access to her children by relying on a restraining order that remained active even after the underlying case had been dismissed. Despite the dismissal, ACS continued to treat the order as valid and used it to block communication, visitation, and parental involvement. In April 2023, ACS reported an alleged violation of this order, prompting NYPD officers to respond. Although officers contacted their command and were informed that no active restraining order could be located, Plaintiff was arrested anyway. The charges were later dismissed and sealed. The continued enforcement of an invalid or unverified restraining order contributed directly to the prolonged and unlawful separation of the family.

21. The actions of ACS, the NYPD, and the New York City Sheriff's Office reflect a broader abuse of power in which legal processes, court orders, and agency authority were used not to protect the children, but to control, punish, and retaliate against Plaintiff. These abuses of authority resulted in unlawful arrests, prolonged separation, and significant emotional, financial, and familial harm.

22. ACS failed to provide Plaintiff with any visitation schedule, transportation assistance, or virtual visitation options following the removal.

23. ACS and Graham Windham failed to notify Plaintiff of service-plan meetings, permanency hearings, educational meetings, or any conferences related to the children's welfare.

24. Plaintiff was excluded from all decision-making regarding her children's education, medical care, mental-health treatment, and placement.

25. While in ACS custody, both children were diagnosed with ADHD and placed on psychiatric medication without Plaintiff's knowledge or consent, despite having no such diagnoses or behavioral issues while in Plaintiff's care.

26. Plaintiff's son Shiloh experienced significant educational regression while in ACS custody, including delayed graduation and academic instability.

27. ACS and Graham Windham repeatedly used incorrect dates, incorrect addresses, and inaccurate statements in case records, including misreporting Shiloh's graduation date and misidentifying Plaintiff's residence.

28. These errors caused delays, confusion, and prolonged separation between Plaintiff and her children.

29. In April 2023, Plaintiff was arrested based on ACS-generated information that was false, outdated, or fabricated.

30. The April 2023 arrest lacked probable cause and was based on misrepresentations by ACS personnel.

31. In July 2023, members of the New York City Sheriff's Office forcibly entered Plaintiff's home and arrested her without probable cause.

32. The July 2023 arrest was based on incorrect address information and false reports circulated by ACS.

33. During the July 2023 arrest, Sheriff's deputies used unnecessary force and contributed to Plaintiff's ongoing trauma.

34. In October 2023, NYPD officers again entered Plaintiff's home without a warrant, without consent, and without exigent circumstances.

35. The October 2023 arrest was also based on false or outdated information created or circulated by ACS.

36. Plaintiff suffered repeated unlawful entries, seizures, and arrests across multiple City agencies, demonstrating a pattern of coordinated misconduct.

37. Graham Windham attempted to "serve" Plaintiff with a Termination of Parental Rights (TPR) petition by placing sticky notes on her door while deliberately blocking her Ring camera.

38. Plaintiff was never personally served with the TPR petition and never received proper mailed notice.

39. Plaintiff did not receive any legally sufficient notice of the TPR proceedings, in violation of due-process requirements.

40. Plaintiff was deprived of the opportunity to participate in proceedings affecting her parental rights.

41. ACS and Graham Windham's actions were not isolated mistakes but part of a systemic pattern of administrative obstruction.

8

42. ACS repeatedly failed to provide Plaintiff with accurate information regarding her children's location, placement, education, and medical treatment.

43. ACS and Graham Windham failed to provide Plaintiff with any meaningful opportunity to maintain contact with her children.

44. Plaintiff's repeated attempts to obtain information, visitation, and participation were ignored or obstructed.

45. ACS's actions caused Plaintiff severe emotional distress, including depression, anxiety, and sleep disturbance.

46. Plaintiff was prescribed Prozac to treat depression resulting from the prolonged separation from her children and the trauma inflicted by Defendants.

47. Plaintiff's children suffered emotional trauma, behavioral changes, and instability as a result of ACS's actions.

48. The children were placed in multiple foster homes, causing further instability and emotional harm.

49. According to court records, the most recent foster parent informed ACS she no longer wanted the children due to "behavioral issues."

50. These behavioral issues did not exist prior to ACS involvement and were caused by the trauma of removal and instability.

   a. 50-A. While in ACS custody, the children were exposed to inappropriate and unsafe environments, including access to explicit adult content on electronic devices provided in foster care.

   b. 50-B. Plaintiff's son reported being physically assaulted by another child who did not reside in the foster home, demonstrating a lack of supervision and unsafe placement conditions.

   c. 50-C. The same child threw Plaintiff's younger child's belongings out of a window, further evidencing instability, emotional harm, and the unsafe nature of the placement.

   d. 50-D. These incidents occurred because ACS placed the children in environments that were not properly supervised, not properly vetted, and not appropriate for their safety or well-being.

9

e. 50-E. These harms did not exist prior to ACS involvement and were a direct result of ACS's negligent placement decisions and failure to monitor the children's safety.

51. ACS and Graham Windham failed to provide Plaintiff with any updates regarding the children's educational progress, medical treatment, or mental-health status.

52. ACS and Graham Windham failed to provide Plaintiff with any documentation or explanation regarding the children's psychiatric diagnoses or medications.

53. ACS and Graham Windham failed to provide Plaintiff with any opportunity to participate in educational planning or medical decisions.

54. ACS's actions deprived Plaintiff of her fundamental right to family integrity.

55. ACS's actions deprived the children of their right to be raised by their mother.

56. The City's use of incorrect addresses and incorrect dates caused delays in court proceedings and prolonged the separation.

57. The City's errors also caused Plaintiff to miss critical deadlines and court appearances through no fault of her own.

58. The City's mishandling and diversion of survivor benefits contributed directly to Plaintiff's housing instability and the initiation of eviction proceedings.

59. Plaintiff's housing instability and the resulting eviction proceedings were direct consequences of the City's diversion or mishandling of benefits intended for the children. Plaintiff suffered financial hardship, emotional distress, and instability as a result of the City's actions.

60. The cumulative effect of these actions caused Plaintiff and her children severe emotional, psychological, educational, and familial harm.

61. These events collectively demonstrate a pattern of unconstitutional conduct by multiple City agencies acting jointly under color of state law.

62. Defendants knew, that the criminal charges against Plaintiff had been dismissed. Plaintiff submitted an Order to Show Cause in Family Court and provided documentation demonstrating that the criminal charges had been dismissed and terminated in her favor.

63. Despite being made aware of the dismissals, ACS attorney Swanter Polce subsequently referenced the charges before the Family Court without informing the court that the charges had been dismissed. Instead, Plaintiff alleges that the existence of the charges was presented in a misleading manner that omitted the fact of their dismissal.

10

64. Plaintiff further alleges that, after Plaintiff repeatedly sought relief through Orders to Show Cause concerning her children, ACS attorney Swanter Polce requested or encouraged the court to discourage Plaintiff from filing additional Orders to Show Cause, thereby interfering with Plaintiff's efforts to seek judicial review and relief regarding the custody, welfare, and placement of her children.

65. Defendants' continued reliance upon dismissed allegations, despite actual knowledge of their favorable termination, contributed to the ongoing deprivation of Plaintiff's parental rights, impaired Plaintiff's ability to obtain meaningful review of agency actions, and caused further emotional, financial, and familial harm.

66. These actions constitute additional evidence of deliberate indifference, procedural unfairness, bad faith, and reckless disregard for Plaintiffs' constitutional rights.

## DAMAGES

67. As a direct and proximate result of Defendants' actions, Plaintiff suffered severe emotional distress, anxiety, depression, humiliation, embarrassment, fear, emotional anguish, and loss of enjoyment of life.

68. Plaintiff required medical and mental-health treatment, including prescription medication, as a result of the trauma caused by Defendants' conduct and the prolonged separation from her children.

69. Plaintiff suffered financial losses, including housing instability, costs associated with court appearances, transportation expenses, communication expenses, and other out-of-pocket costs incurred while attempting to locate, communicate with, and advocate for her children.

70. Plaintiff suffered the loss of companionship, care, custody, management, guidance, affection, and society of her children.

71. The minor Plaintiffs suffered emotional trauma, psychological injury, educational disruption, instability, loss of normal childhood experiences, and deprivation of the care, companionship, and guidance of their mother.

72. Plaintiff was deprived of the opportunity to participate in important educational, medical, developmental, and family events involving her children, including milestones that cannot be recreated or replaced.

73. Plaintiff's reputation was harmed by false allegations, inaccurate reports, and the continued reliance on information that was misleading, inaccurate, or unsupported.

11

74. Plaintiffs have suffered damages that are continuing in nature and are expected to continue into the future, including emotional, psychological, educational, familial, and financial harm.

75. As a result of Defendants' conduct, Plaintiffs are entitled to compensatory damages, punitive damages against the individual defendants, costs, attorney's fees where permitted by law, and such other relief as the Court deems just and proper.

## RELEVANT CASE LAW

*Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996)An arrest without probable cause violates the Fourth Amendment. All charges against Plaintiff were dismissed, confirming the absence of probable cause.*

*Graham v. Connor, 490 U.S. 386 (1989)Excessive force is evaluated under an objective reasonableness standard. Dragging Plaintiff outside naked and handcuffing her unclothed was unreasonable and unconstitutional.*

*Rohman v. N.Y.C. Transit Auth., 215 F.3d 208 (2d Cir. 2000)A malicious prosecution claim requires initiation of charges, lack of probable cause, malice, and favorable termination. All elements are met here.*

*Tenenbaum v. Williams, 193 F.3d 581 (2d Cir. 1999)Removing a child without a court order or exigent circumstances violates the Fourteenth Amendment right to family integrity. ACS removed Plaintiff's children without a court order.*

*Santosky v. Kramer, 455 U.S. 745 (1982)Termination of parental rights requires clear and convincing evidence and full due process. Plaintiff was never served, never notified, and never given a hearing.*

*Mullane v. Central Hanover Bank, 339 U.S. 306 (1950)Due process requires notice "reasonably calculated" to reach the person. Sticky notes placed while blocking Plaintiff's Ring camera do not satisfy constitutional notice.*

*Carey v. Piphus, 435 U.S. 247 (1978)Emotional distress damages are recoverable under §1983 when constitutional rights are violated. Plaintiff and her children suffered severe emotional harm.*

*Monell v. Dep't of Social Services, 436 U.S. 658 (1978)A municipality is liable when its policies, customs, or failures to train cause constitutional violations. Plaintiff's injuries resulted from City-wide practices involving NYPD, ACS, EMS, and contracted foster agencies.*

## CAUSES OF ACTION

COUNT I – Fourth Amendment: Unlawful Entry (42 U.S.C. § 1983)

1. Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.

2. On December 17, 2022, ACS workers and NYPD officers entered Plaintiffs' home without a warrant, without consent, and without exigent circumstances.

3. The warrantless entry on December 17, 2022 violated Plaintiffs' clearly established rights under the Fourth Amendment.

4. In July 2023, members of the New York City Sheriff's Office forcibly entered Plaintiffs' home without a warrant, without consent, and without exigent circumstances, including at an incorrect or outdated address.

5. The Sheriff's Office's warrantless entry in July 2023 violated Plaintiffs' clearly established Fourth Amendment rights.

6. In October 2023, NYPD officers again entered Plaintiffs' home without a warrant, without consent, and without exigent circumstances.

7. The October 2023 warrantless entry further violated Plaintiffs' clearly established Fourth Amendment rights.

8. All Defendants acted under color of state law when they unlawfully entered Plaintiffs' residence.

**COUNT II – Fourth Amendment: False Arrest and False Imprisonment (42 U.S.C. § 1983)**

9. Plaintiffs repeat and re-allege all preceding paragraphs.

10. On December 17, 2022, NYPD officers seized and arrested Plaintiff without probable cause.

14

11. In April 2023, Plaintiff was again arrested in connection with ACS-initiated matters, without probable cause and based on incorrect, outdated, or fabricated information.
12. In July 2023, members of the New York City Sheriff's Office seized and arrested Plaintiff without probable cause, including based on incorrect address information and false reports.
13. In October 2023, NYPD officers again seized and arrested Plaintiff without probable cause.
14. Each of these arrests constituted an unreasonable seizure under the Fourth Amendment.
15. Defendants lacked probable cause for each arrest and acted under color of state law.
16. Defendants' actions violated Plaintiff's clearly established rights to be free from unreasonable seizures, false arrest, and false imprisonment.
17. Plaintiffs suffered emotional, familial, and psychological harm as a result.

## COUNT III – Fourth Amendment: Excessive Force (42 U.S.C. § 1983)

18. Plaintiffs repeat and re-allege all preceding paragraphs.
19. During the December 17, 2022 incident, NYPD officers used unnecessary and unreasonable force against Plaintiff.
20. During the April 2023 arrest, Defendants again used excessive force not justified by Plaintiff's conduct.
21. During the July 2023 arrest, Sheriff's deputies used unnecessary and unreasonable force against Plaintiff.
22. During the October 2023 arrest, NYPD officers again used excessive force.
23. EMS personnel attempted to administer an involuntary medical injection to Plaintiff without medical justification, consent, a court order, or any emergency condition.
24. Defendants' use of force caused Plaintiff physical pain, trauma, and emotional distress, and caused Plaintiffs emotional and familial harm.
25. Defendants acted under color of state law at all relevant times.

## COUNT IV – Fourteenth Amendment: Procedural Due Process (Child Removal & Notice)

26. Plaintiffs repeat and re-allege all preceding paragraphs.

27. ACS removed Plaintiff's children without providing timely, accurate, or legally sufficient notice.

28. ACS repeatedly created and circulated false information, depriving Plaintiff of meaningful participation.

29. ACS and Graham Windham failed to notify Plaintiff of conferences, service-plan meetings, permanency hearings, and educational meetings.

30. When the TPR petition was filed, Graham Windham attempted improper service by placing sticky notes on Plaintiff's door while blocking her Ring camera.

31. Plaintiff was never personally served and never received proper mailed notice.

32. Defendants failed to provide notice reasonably calculated to inform Plaintiff of proceedings affecting her parental rights.

33. As a result, Plaintiff suffered loss of parental rights, emotional distress, educational harm, and deprivation of family integrity.


## COUNT V – Fourth & Fourteenth Amendments: Malicious Prosecution (42 U.S.C. § 1983)


34. Plaintiffs repeat and re-allege all preceding paragraphs.

35. Defendants initiated criminal charges without probable cause, relying on false information created by ACS.

36. Defendants continued prosecutions even after allegations were shown to be unfounded.

37. The prosecutions arising from the December 17, April 2023, July 2023, and October 2023 arrests were initiated and maintained with malice.

38. Plaintiff was repeatedly arrested, detained, and forced to defend herself against baseless accusations.

39. The criminal proceedings terminated in Plaintiff's favor or lacked lawful basis.

40. Defendants acted under color of state law.

41. Plaintiffs suffered emotional, familial, and financial harm.

61. ACS created and circulated false information used to justify removal and criminal charges.
62. Defendants interfered with Plaintiffs' ability to maintain family integrity, participate in education, and attend milestones.
63. Plaintiff suffered deprivation of her fundamental right to family integrity.
64. Defendants' conduct was arbitrary, conscience-shocking, and deliberately indifferent.

## COUNT IX – Failure to Train, Supervise, and Discipline (42 U.S.C. § 1983)

65. Plaintiffs repeat and re-allege all proceeding paragraphs as though fully set forth herein.
66. The City and supervisory personnel failed to train employees regarding constitutional limits on seizures, force, medical interventions, and removals.
67. ACS employees were not trained on lawful removal procedures.
68. NYPD and Sheriff personnel were not trained on unlawful seizures and reliance on false information.
69. EMS personnel attempted an involuntary injection without justification.
70. The City failed to train employees to verify information and avoid fabricated reports.
71. The City failed to discipline employees who engaged in unconstitutional conduct.
72. These failures caused Plaintiffs' injuries.

## COUNT X – Fourteenth Amendment: Procedural Due Process (Notice & Participation)

73. Plaintiffs repeat and re-allege all preceding paragraphs.
74. ACS and Graham Windham deprived Plaintiff of due process by failing to provide adequate notice of conferences, hearings, and educational meetings.
75. Plaintiff was excluded from proceedings affecting her parental rights and her children's education.

48. Plaintiffs suffered emotional, financial, reputational, and familial harm.

### COUNT VII – Municipal Liability (Monell) Against the City of New York

49. Plaintiffs repeat and re-allege all proceeding paragraphs as though fully set forth herein.
50. The constitutional violations described were caused by policies, practices, or customs of the City of New York.
51. The City permitted ACS to create and circulate false information without oversight.
52. The City allowed NYPD and Sheriff personnel to conduct warrantless entries and arrests without probable cause.
53. The City failed to ensure plaintiff received proper notice and accurate information.
54. The City failed to prevent the use of incorrect addresses, misdirected service, and address errors that prolonged separation.
55. The City allowed diversion or mishandling of survivor benefits intended for Plaintiff's children.
56. These failures contributed to eviction proceedings and housing instability for Plaintiff.
57. The City's failures were the moving force behind the violations suffered by Plaintiffs.

### COUNT VIII – Fourteenth Amendment: Substantive Due Process (Family Integrity)

58. Plaintiffs repeat and re-allege all proceeding paragraphs as though fully set forth herein.
59. ACS removed Plaintiff's children without a court order or exigent circumstances.
60. ACS failed to investigate Plaintiff's report of assault.

18

## COUNT VI – FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)

42. Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.

43. Plaintiff engaged in protected First Amendment activity when she called 911 to report the ACS worker's assault and misconduct, complained about NYPD and ACS actions, filed complaints and Orders to Show Cause in Family Court, challenged false allegations and incorrect information, attempted to participate in court proceedings, sought help from the courts to correct ACS errors, and asserted her rights during and after the December 17, 2022 incident.

44. Defendants retaliated against Plaintiff by arresting her three additional times without probable cause, relying on false, outdated, or fabricated information, escalating ACS involvement, prolonging the separation from her children, interfering with her ability to participate in Family Court, and discouraging her from filing further complaints or Orders to Show Cause.

45. The retaliatory arrests and actions would deter a person of ordinary firmness from exercising First Amendment rights.

46. Defendants' retaliatory conduct was a substantial and motivating factor in the adverse actions taken against Plaintiff.

47. Defendants acted under color of state law.

17

76. Defendants failed to provide notice reasonably calculated to inform Plaintiff.
77. Plaintiffs suffered emotional distress, educational regression, and deprivation of family integrity.

## COUNT XI – Civil Rights Conspiracy (42 U.S.C. § 1983)

78. Plaintiffs repeat and re-allege all preceding paragraphs.
79. Defendants reached an agreement to deprive Plaintiffs of constitutional rights.
80. Overt acts included unlawful entry, false arrest, excessive force, attempted involuntary injection, denial of notice, misuse of addresses, and diversion of survivor benefits.
81. Plaintiffs suffered emotional, educational, financial, and familial harm.

## COUNT XII – Failure to Intervene (42 U.S.C. § 1983)

82. Plaintiffs repeat and re-allege all preceding paragraphs.
83. Defendants had a realistic opportunity to intervene to prevent violations of Plaintiff's rights.
84. Defendants failed to intervene to stop unlawful entry, false arrest, excessive force, misuse of addresses, and diversion of benefits.
85. Plaintiffs suffered emotional, educational, and financial harm.

## COUNT XIII – Conspiracy to Interfere With Civil Rights (42 U.S.C. § 1985(3))

86. Plaintiffs repeat and re-allege all preceding paragraphs.
87. Defendants conspired to deprive Plaintiffs of equal protection and equal privileges.

20

88. Overt acts included false information, warrantless entries, arrests without probable cause, denial of notice, misuse of addresses, and diversion of survivor benefits.
89. Plaintiffs suffered emotional distress, educational regression, financial harm, and deprivation of family integrity.

## COUNT XIV – Failure to Prevent Conspiracy (42 U.S.C. § 1986)

90. Plaintiffs repeat and re-allege all preceding paragraphs.
91. Supervisory defendants knew of the conspiracy and had the power to prevent it.
92. They failed to act, allowing the violations to continue.
93. Plaintiffs suffered emotional, educational, financial, and familial harm.

## COUNT XV – Equal Protection (Fourteenth Amendment)

94. Plaintiffs repeat and re-allege all preceding paragraphs.
95. Defendants intentionally treated Plaintiff differently from similarly situated individuals without rational basis.
96. Defendants relied on false information, denied notice, misused addresses, and diverted survivor benefits.
97. Plaintiffs suffered emotional distress, educational regression, financial harm, and deprivation of family integrity.

## COUNT XVI – Abuse of Process

98. Plaintiffs repeat and re-allege all preceding paragraphs.
99. Defendants misused legal process to harass Plaintiff, justify unlawful removals, and support baseless arrests.

21

100. Defendants used incorrect addresses and defective service to delay proceedings and prolong separation.

101. Plaintiff suffered emotional distress, eviction proceedings, financial harm, and loss of parental rights.

## COUNT XVII – Intentional Infliction of Emotional Distress

102. Plaintiffs repeat and re-allege all preceding paragraphs.

103. Defendants engaged in extreme and outrageous conduct, including unlawful entries, false arrests, excessive force, attempted involuntary injection, misuse of addresses, diversion of survivor benefits, and fabrication of information.

104. Defendants intended to cause or recklessly disregarded the likelihood of causing severe emotional distress.

105. Plaintiffs suffered severe emotional distress, trauma, educational regression, financial harm, and disruption of family integrity.

## COUNT XVIII – Negligence and Gross Negligence

106. Plaintiffs repeat and re-allege all preceding paragraphs.

107. Defendants owed Plaintiffs a duty to act with reasonable care.

108. Defendants breached this duty by relying on false information, conducting warrantless entries, initiating baseless arrests, attempting forced injection, using incorrect addresses, failing to provide notice, and mishandling survivor benefits.

109. Defendants' conduct was negligent, reckless, and grossly negligent.

110. Plaintiff suffered financial harm, eviction proceedings, loss of parental rights, and emotional distress.

## COUNT XIX – Prima Facie Tort

22

111.    Plaintiffs repeat and re-allege all preceding paragraphs.

112.    Defendants intentionally engaged in conduct motivated solely or primarily to harm Plaintiffs.

113.    Defendants circulated false information, initiated baseless investigations, executed warrantless entries, attempted involuntary injection, used incorrect addresses, diverted survivor benefits, and contributed to eviction proceedings and educational harm.

114.    Defendants' conduct was malicious, willful, and without lawful excuse.

115.    Plaintiffs suffered emotional distress, financial loss, educational regression, missed milestones, reputational damage, and loss of family integrity. Proceedings and educational harm.

116.    Defendants' conduct was malicious, willful, and without lawful excuse.

117.    Plaintiffs suffered emotional distress, financial loss, educational regression, missed milestones, reputational damage, and loss of family integrity.

## PRESERVATION OF EVIDENCE

Plaintiff requests preservation of all evidence relating to the incidents and events described herein, including but not limited to body-worn camera footage, radio transmissions, CAD reports, Sprint reports, DD-5 reports, aided reports, arrest paperwork, complaint reports, EMS records, ambulance records,

hospital records, ACS case files, ACS progress notes, SCR records, photographs, video recordings, Ring camera recordings, Family Court filings, Sheriff's Office records, Graham Windham records, visitation records, permanency records, service plan records, emails, text messages, electronic communications, disciplinary records, supervisory reviews, investigative files, and all electronically stored information.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

**Compensatory damages** in an amount to be determined at trial for physical injury, emotional distress, humiliation, loss of liberty, reputational harm, and the destruction of family integrity.
(compensatory damages)

**Punitive damages** against the individual Defendants for their willful, malicious, reckless, and unconstitutional conduct.
(punitive damages)

**Declaratory relief** stating that Defendants' actions violated Plaintiff's rights under the Fourth and Fourteenth Amendments, including her fundamental right to family integrity.
(declaratory relief)

**Injunctive relief requiring the City of New York, ACS, and their contracted agencies to cease all unconstitutional practices** related to warrantless home entries, unlawful removals, false reporting, and failure to provide due process in child-welfare matters.
(injunctive relief)

**An order directing the City of New York and ACS to immediately restore Plaintiff's full parental rights and custody of her children,** or in the alternative, **a declaration that the removal and continued separation were unconstitutional,** thereby requiring the City to take corrective action consistent with federal law.
(family integrity relief)

24

**Reasonable attorneys' fees and costs** pursuant to 42 U.S.C. § 1988.
(Section 1988 fees)

**Such other and further relief** as the Court deems just and proper.
(other relief)

JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

VERIFICATION

I, Camica Alley, declare under penalty of perjury that I am the Plaintiff in the above-entitled action; that I have read the foregoing Amended Complaint; and that the facts stated therein are true and correct to the best of my knowledge, information, and belief. Dated: _____ 6/9/26 _____

Camica Alley

1899 Crotona Avenue, Apt. 4I

Bronx, NY 10457

(347) 329-8138

micaframe@yahoo.com

25

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Camica Alley,

Plaintiff.

V

City of New York, et al.,

Defendants.

Case No.: 25-cv-10346

AMENDED COMPLAINT