(1:25CV10346 LJL)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

CAMICA ALLEY, individually and as parent and natural guardian of her minor children S.A. and A.B-A.,

Plaintiffs,

RECEIVED
SDNY PRO SE OFFICE
2026 AUG 31 AM 9:15

v.

CITY OF NEW YORK;

SWANTER POLCE, ACS Attorney (in her individual capacity);

**NYPD Officers (December 17, 2022 Arrest):**

- Officer Akieva Longmire, NYPD 24th Precinct
- Officer Jennifer Medrano, NYPD 24th Precinct
- Officer Samantha Cortez, NYPD 24th Precinct
- Officer Tyesha McCloud, NYPD 24th Precinct
- Officer Matthew Meister, NYPD 24th Precinct
- Officer Gregory Welch, NYPD 24th Precinct
- Officer Brandon Watson, NYPD 24th Precinct
- Officer Steward Eiel, NYPD 24th Precinct
- Officer Ahmed Adekoya, NYPD 24th Precinct

**EMS Personnel (December 17, 2022 Arrest):**

- Sung Choi

**ACS Workers (December 17, 2022 Arrest):**

- Fernella Cain
- Karen Grier (former ACS)
- Gina Villachica

**Emergency Service Unit (ESU) Officers (December 17, 2022 Arrest):**

- JOHN DOE ESU Officers 1–10 (identities presently unknown)

**NYPD Officers (April 5, 2023 Arrest):**

- Detective Nashalie Mercado, Shield No. 20084, NYPD 40th Precinct Detective Squad
- Sergeant Brian Treuhalt, Shield No. 00579, NYPD 25th Precinct
- JOHN DOE OFFICERS 11–20 (identities presently unknown)

**Sheriff's Deputies (July 26, 2023 Arrest):**

- LaToya Jackman, Office of the Sheriff, Staten Island Business Center
- Giffarie Campbell, Office of the Sheriff, Bronx Customer Service Center
- Adrian Baptiste, Office of the Sheriff, Brooklyn Business Center
- Yung Wong, Office of the Sheriff, Staten Island Business Center

**NYPD Officers (October 11, 2023 Arrest):**

- Officer Joanna Vanegas, Shield No. 12910, NYPD 32nd Precinct
- JOHN DOE Detectives 21–30 (identities presently unknown)

Defendants.

**Case number : 1:25 cv 10346 LJL**

*AMENDED COMPLAINT*

**42 U.S.C. § 1983 – CIVIL RIGHTS VIOLATIONS**

***JURISDICTION & VENUE***

1. This action arises under the Constitution and laws of the United States, including **42 U.S.C. § 1983**, which provides a civil remedy for the deprivation of rights secured by the Constitution and federal law.

2. This Court has **subject-matter jurisdiction** pursuant to **28 U.S.C. §§ 1331 and 1343**, because Plaintiffs allege violations of their rights under the **First, Fourth, and Fourteenth Amendments** to the United States Constitution.

3. This Court has **supplemental jurisdiction** over Plaintiffs' related state-law claims under **28 U.S.C. § 1367**, because those claims arise from the same events and form part of the same case or controversy.

4. Venue is proper in the **Southern District of New York** under **28 U.S.C. § 1391(b)** because a substantial part of the events and omissions giving rise to these claims occurred within this District, including the unlawful entry, false arrest, excessive force, retaliatory arrests, removal of the minor Plaintiffs, and subsequent due-process violations.

***PARTIES***

1. Plaintiff Camica Alley is an adult resident of New York County and the mother and natural guardian of minor children S.A. and A.B-A. Plaintiff brings this action individually and on behalf of her minor children, each of whom suffered direct constitutional, emotional, psychological, educational, and family-integrity injuries as a result of Defendants' actions.

2. Plaintiff S.A. is a minor child who suffered emotional trauma, psychological harm, educational disruption, and deprivation of family integrity due to Defendants' conduct. Plaintiff Alley brings these claims on S.A.'s behalf.

3. Plaintiff A.B-A. is a minor child who suffered emotional trauma, psychological harm, educational disruption, and deprivation of family integrity due to Defendants' conduct. Plaintiff Alley brings these claims on A.B-A.'s behalf.

4. Defendant City of New York is a municipal corporation responsible for the policies, practices, supervision, training, and conduct of the New York City Police Department ("NYPD"), the Administration for Children's Services ("ACS"), the New York City Sheriff's Office, Emergency Medical Services ("EMS"), and contracted foster-care agencies including Graham Windham.

5. ***Defendants NYPD Officers (December 17, 2022 Arrest)*** — Officer Jennifer Medrano, Defendants NYPD Officers (December 17, 2022 Arrest) — Officer Jennifer Medrano, Officer Samantha Cortez, Officer Akieva Longmire, Officer Tyesha McCloud, Officer Matthew Meister, Officer Gregory Welch, Officer Brandon Watson, Officer Steward Eiel, and Officer Ahmed Adekoya — are members of the NYPD 24th Precinct who participated in the unlawful entry, arrest, public exposure, malicious prosecution of Plaintiff Alley, and the wrongful removal of minor Plaintiffs S.A. and A.B.-A. Each officer is sued in their individual capacity.

6. **Defendants Emergency Service Unit (ESU) Officers (*December 17, 2022 Arrest*)** — Defendants JOHN DOE ESU Officers 1–10 are unidentified members of the NYPD Emergency Service Unit who physically breached and removed Plaintiff Alley's door during the December

17, 2022 incident. These officers participated in the unlawful entry, excessive force, and wrongful removal of minor Plaintiffs S.A. and A.B.-A. Each ESU officer is sued in his or her individual capacity

7. ***Defendant EMS Personnel (December 17, 2022 Arrest)*** — Sung Choi — is an EMS worker who attempted to forcibly inject Plaintiff Alley with an unknown chemical substance without medical justification, consent, or lawful authority, constituting an unlawful use of force and a violation of Plaintiff Alley's constitutional rights. Defendant Choi is sued in his **individual capacity**.

8. ***Defendants ACS Workers (December 17, 2022 Incident)*** — Fernella Cain physically assaulted Plaintiff Alley. Defendant Karen Grier witnessed the assault and failed to intervene or report it. Defendant Gina Villachica escalated the situation , contributing to the unlawful removal of the minor Plaintiffs Together, these ACS employees wrongfully removed minor Plaintiffs S.A. and A.B.-A. without a court order or exigent circumstances. Each is sued in their **individual capacity**.

9. ***Defendants NYPD Officers & John Does (April 5, 2023 Arrest)*** — Detective Nashalie Mercado (Shield No. 20084, NYPD 40th Precinct Detective Squad) and Sergeant Brian Treuhalt (Shield No. 00579, NYPD 25th Precinct) initiated an unlawful arrest of Plaintiff Alley. Defendant Mercado called for backup, bringing additional unidentified officers to the scene. These backup officers—sued herein as **Defendants JOHN DOE OFFICERS 11–20** in their individual capacities—actively participated in using excessive force against Plaintiff Alley. During this interaction, officers physically damaged Plaintiff Alley's phone and clothing, applied excessively tight handcuffs, and inflicted physical injuries and severe bruising that required Plaintiff Alley to seek emergency room treatment at the hospital immediately after release. Defendants Mercado and Treuhalt are each sued in their **individual capacity**.

10. ***Defendants Sheriff's Deputies (July 26, 2023 Arrest)*** — LaToya Jackman, Giffarie Campbell, Adrian Baptiste, and Yung Wong, members of the New York City Sheriff's Office, participated in the unlawful arrest of Plaintiff Alley under a Family Court warrant that had been dismissed in December 2022. During the arrest, Defendant Baptiste placed his foot on Plaintiff Alley's bed, and deputies used excessive force—including ripping Plaintiff Alley's shirt, exposing her chest, and applying excessively tight handcuffs—causing physical injuries and severe bruising that required Plaintiff Alley to seek emergency room treatment. Each is sued in their **individual capacity**.

11. **Defendants NYPD Officers & John Does (October 11, 2023 Arrest)** — Unidentified detectives from the NYPD forcefully entered Plaintiff Alley's residence while Plaintiff Alley was undressed after exiting the shower and minor Plaintiff A.B.-A. was asleep inside. These officers used excessive force and applied excessively tight handcuffs, causing severe bruising and triggering an acute asthma attack that left Plaintiff Alley struggling to breathe. As a result, Plaintiff Alley was transported by emergency medical services directly to the hospital prior to being taken to the precinct. These unknown entry officers are sued herein as **Defendants JOHN DOE DETECTIVES 21–30** in their individual capacities. **Defendant Officer Joanna Vanegas** (Shield No. 12910, NYPD 32nd Precinct), sued in her individual capacity, was not present during the residential entry; Plaintiff Alley first encountered Defendant Vargas at the precinct, where Defendant Vargas provided a shirt and subsequently signed the criminal complaint.

12. **Defendant Attorney Swanter Polce** acted under color of state law as an attorney representing ACS. Defendant Polce knowingly, intentionally, and maliciously fabricated material facts before the court to mislead the judge, stigmatize Plaintiff Alley, and secure the unlawful removal of Plaintiff's children. Specifically, Defendant Polce falsely represented that Plaintiff Alley had "17 charges brought against her" despite knowing those prior charges were dismissed and sealed under N.Y. CPL § 160.50; fabricated a non-existent "bipolar" diagnosis; falsely claimed Plaintiff Alley failed to maintain health insurance while ACS improperly opened an unauthorized Medicaid account; and instructed the court to disregard Plaintiff's pro se filings. Defendant Polce is sued in her **individual capacity**.

## ***RESERVATION OF RIGHTS REGARDING UNIDENTIFIED DOE DEFENDANTS***

a. The specific, unidentified **Emergency Service Unit (ESU) officers** who physically breached and removed Plaintiff Alley's door during the December 17, 2022 incident remain unnamed solely because the City of New York has failed to provide their identities. Plaintiffs bring claims against these unknown on-scene entry officers as **DEFENDANTS JOHN DOE ESU OFFICERS 1–10** in their individual capacities, and explicitly reserve the right under Fed. R. Civ. P. 15 to substitute their true names, shield numbers, and official titles immediately upon disclosure through a Valentin Order, initial disclosures, or court-ordered discovery.

b. For the April 5, 2023 incident, Defendant Detective Nashalie Mercado called for backup, bringing additional unidentified officers to the scene who actively participated in using excessive force against Plaintiff Alley and damaging her property. These unknown backup officers are sued herein as **DEFENDANTS JOHN DOE OFFICERS 11–20** in their individual capacities.

c. Pursuant to Federal Rule of Civil Procedure 15, Plaintiffs explicitly reserve the right to amend this Complaint to substitute the true names, badge numbers, and official titles of **Defendants JOHN DOE ESU OFFICERS 1–10** and **Defendants JOHN DOE OFFICERS 11–20** immediately upon disclosure through a Valentin Order, initial disclosures, or court-ordered discovery.

d. Plaintiffs preserve this language because the City's repeated administrative errors, omissions, and incomplete disclosures make its responses inherently unreliable. This section ensures that the City's failure to identify all involved personnel does not hinder Plaintiffs' ability to hold every responsible party accountable.

e. For the October 11, 2023 incident, the City has identified only a single individual — **Defendant Officer Joanna Vanegas (Shield No. 12910, NYPD 32nd Precinct)**. Defendant Vanegas was not one of the arresting officers who entered Plaintiff Alley's residence. Plaintiff Alley did not encounter Vanegas on scene; she first met Vanegas at the precinct after the arrest had already occurred.

f. The specific, unidentified **NYPD detectives** who physically entered Plaintiff Alley's residence during the October 11, 2023 incident remain unnamed solely because the City has failed to provide their identities. Plaintiffs bring claims against these unknown on-scene officers as **DEFENDANTS JOHN DOE DETECTIVES 21–30** in their individual capacities, and explicitly reserve the right under Fed. R. Civ. P. 15

to substitute their true names and shield numbers immediately upon disclosure through court order or discovery.

## ***FACTUAL ALLEGATIONS***

**1.** Prior to December 17, 2022, Defendant ACS Worker Gina Villachica visited Plaintiffs' residence alone.

**2.** On December 17, 2022, during the Christmas holiday season, Plaintiffs were inside their residence peacefully recovering from illness; after setting up their Christmas tree, Plaintiff Camica Alley was in the kitchen washing dishes when Defendants ACS Workers Cain and Grier arrived.

**3.** Defendants ACS Workers Fernella Cain and Karen Grier arrived at Plaintiffs' apartment door and began knocking aggressively.

**4.** Unsure who was outside and with her hands in water from washing dishes, Plaintiff Camica Alley instructed her minor child to call 911 to seek emergency assistance.

**5.** Plaintiff Alley remained on the phone with emergency dispatchers as ACS workers continued the aggressive interaction outside her door. During which Defendant Cain physically assaulted Plaintiff Alley.

**6.** NYPD officers arrived shortly thereafter while Plaintiff Alley was still on the active 911 call.

**7.** ACS and NYPD escalated the encounter at Plaintiffs' home despite Plaintiff Alley's ongoing communication with emergency services and despite Plaintiffs having committed no crime, posed no danger, and being safely inside their residence.

**8.** ACS and NYPD entered Plaintiffs' home without a warrant, without consent, and without lawful justification.

**9.** Following the unlawful entry, minor Plaintiffs S.A. and A.B.-A. were removed from the home without a valid legal basis, causing severe emotional, physical, and financial harm to Plaintiffs and their family.

10. Emergency Service Unit (ESU) Involvement unidentified members of the NYPD Emergency Service Unit (ESU) forcibly breached and removed the front door of Plaintiff Alley's residence during the December 17, 2022 incident. These ESU officers acted in concert with ACS workers and NYPD patrol officers to unlawfully enter the home, expose Plaintiff Alley to public humiliation, and wrongfully remove minor Plaintiffs S.A. and A.B.-A. The ESU officers used excessive force in executing the entry, causing property damage and contributing to the unlawful arrest and malicious prosecution of Plaintiff Alley. Because the City of New York has failed to disclose the identities of these ESU officers, they are sued herein as JOHN DOE ESU Officers 1–10, in their individual capacities.

**11.** The arrest paperwork generated by Defendants for the December 17, 2022 incident contained a critical factual error regarding Plaintiff Alley's identity. While Plaintiff Alley's actual date of birth is September 25, 1985, Defendants officially listed her date of birth as September 2, 1985. This error demonstrates a fundamental lack of basic verification, directly undermining the reliability of Defendants' records. Despite this inaccuracy, Defendants repeatedly circulated and relied upon this invalid arrest record throughout subsequent Family Court proceedings, directly contributing to adverse actions taken against Plaintiffs.

**12.** From December 17, 2022 through the present day, Plaintiffs have endured continuous harm caused by the actions of City agencies. As of August 2026—more than three years later—minor Plaintiffs S.A. and A.B.-A. still have not been returned to Plaintiff Alley, underscoring the prolonged and continuing nature of these constitutional violations and the trauma inflicted.

13. These incidents collectively demonstrate a pattern of unlawful conduct by City agencies that resulted in significant violations of Plaintiffs' constitutional rights.

14. April 5, 2023 Arrest (Mercado & Backup Officers)On April 5, 2023, Detective Nashalie Mercado and Sergeant Brian Treuhalt initiated an unlawful arrest of Plaintiff Alley. Mercado called for backup, bringing additional unidentified NYPD officers (John Doe Officers 11–20) who used excessive force, damaged Plaintiff Alley's property, and applied tight handcuffs causing injuries.

15. July 26, 2023 Arrest (Sheriff's Deputies)On July 26, 2023, Sheriff's Deputies LaToya Jackman, Giffarie Campbell, Adrian Baptiste, and Yung Wong unlawfully arrested Plaintiff Alley under a Family Court warrant that had already been dismissed. Deputies used excessive force, ripped Plaintiff Alley's shirt, exposed her chest, and applied tight handcuffs causing injuries.

16. October 11, 2023 Arrest (Vanegas & Detectives)On October 11, 2023, unidentified NYPD detectives (John Doe Detectives 21–30) forcefully entered Plaintiff Alley's residence while she was undressed and minor Plaintiff A.B.-A. was asleep. Detectives used excessive force, applied tight handcuffs, and triggered an asthma attack requiring hospital transport. Officer Joanna Vanegas was encountered later at the precinct, where she provided a shirt and signed the criminal complaint.

## ***SYSTEMIC PATTERN OF DUE PROCESS VIOLATIONS ACROSS MULTIPLE AGENCIES***

1. The constitutional violations in this case were not isolated to the NYPD. Plaintiff was subjected to a coordinated pattern of misconduct involving ACS, EMS personnel, the New York City Sheriff's Office, and the foster-care agency Graham Windham, all acting jointly under color of state law.

2. ACS workers escalated the December 17, 2022 incident, ignored Plaintiff's report that she had been assaulted by an ACS employee, and later initiated or contributed to proceedings that resulted in the wrongful removal of Plaintiff's children. ACS repeatedly relied on false information, incorrect dates, incorrect addresses, and misleading statements, depriving Plaintiff of procedural due process.

3. The New York City Sheriff's Office later participated in the July 2023 arrest, contributing to the ongoing pattern of harassment, intimidation, and retaliation against Plaintiff.

4. Graham Windham, the foster-care agency contracted by ACS to manage Plaintiff's children's placement, also participated in the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment. Although ACS generated case reports, Graham Windham was responsible for notifying Plaintiff of conferences, service-plan meetings, and permanency-related proceedings. Graham Windham failed to notify Plaintiff of any such meetings, excluding her entirely from the process and denying her a meaningful opportunity to be heard.

5. When the Termination of Parental Rights (TPR) petition was filed, a Graham Windham worker attempted "service" by placing sticky notes on Plaintiff's door while deliberately blocking her Ring camera, preventing her from receiving actual notice. Plaintiff was never personally served and never mailed proper notice.

6. These actions demonstrate that the violations of Plaintiff's rights were not isolated mistakes but part of a broader pattern of coordinated misconduct by multiple City agencies and contracted providers. This systemic failure deprived Plaintiff of her rights to family integrity, bodily integrity, and procedural due process under the Fourteenth Amendment.

7. Plaintiff also received defective and inconsistent notices that failed to provide proper legal notice of the proceedings. These notices did not meet due-process requirements and deprived Plaintiff of adequate and timely notice as required by the Fourteenth Amendment.

8. Following the December 17, 2022 removal, ACS withheld all meaningful information regarding the children's location, safety, and placement. Plaintiff was intentionally kept uninformed and was not told where her children had been taken.

9. It was later revealed that ACS had transported the children out of state to New Jersey and placed them with the deceased father's ex-wife—a person with whom Plaintiff and the children had no relationship, no prior contact, and no established bond. ACS never provided proper notice, justification, or explanation for this out-of-state placement. Plaintiff was never consulted regarding placement options, despite being the custodial parent and despite no court order authorizing removal or out-of-state placement.

10. ACS further restricted Plaintiff's access to her children by relying on a restraining order that remained active even after the underlying case had been dismissed. Despite the dismissal, ACS continued to treat the order as valid and used it to block communication, visitation, and parental involvement. In April 2023, ACS reported an alleged violation of this order, prompting NYPD officers to respond. Although officers contacted their command and were informed that no active restraining order could be located, Plaintiff was arrested anyway. The charges were later dismissed and sealed. The continued enforcement of an invalid or unverified restraining order contributed directly to the prolonged and unlawful separation of the family.

11. The actions of ACS, the NYPD, and the New York City Sheriff's Office reflect a broader abuse of power in which legal processes, court orders, and agency authority were used not to protect the children, but to control, punish, and retaliate against Plaintiff. These abuses of authority resulted in unlawful arrests, prolonged separation, and significant emotional, financial, and familial harm.

11-A. ACS Conduct as Driving Force Behind Escalation and NYPD Reliance

- **[X]** Defendant ACS caseworker Gina Villachica was not physically present at Plaintiffs' residence on December 18, 2022.
- **[Y]** Despite her absence, ACS records and criminal complaints generated on or about that date repeatedly invoked Villachica's name and alleged statements to construct a false narrative of imminent danger.
- **[Z]** Defendants ACS and attorney Swanter Polce intentionally created and circulated these false administrative representations, serving as the driving force behind escalating governmental action against Plaintiffs.
- **[AA]** Responding NYPD officers relied upon these representations and unverified records to justify their actions.
- **[BB]** In or around April 2023, Villachica falsely represented to responding NYPD officers that Plaintiff Camica Alley was subject to an active restraining order.
- **[CC]** Although NYPD command staff could not verify the existence of any such order, officers relied on Villachica's unverified assertion to execute an unlawful arrest of Plaintiff.
- **[DD]** Defendants' coordinated generation and reliance on false, unverified records directly caused escalating retaliation, multiple unlawful arrests, and the prolonged separation of Plaintiffs.

11-B. Judicial Assignment Irregularities

- **[X]** During the relevant period, Plaintiff observed that two judges with the same surname — Judge Anna Lewis in Family Court and Judge Lewis in Criminal Court — were presiding over matters connected to the December 2022 allegations.
- **[Y]** Plaintiff raised concerns with court staff regarding a potential relationship or conflict of interest.
- **[Z]** Shortly thereafter, Judge Anna Lewis was removed from Plaintiff's Family Court case and did not return.

- **[AA]** The overlap in judicial assignments, combined with the abrupt reassignment following Plaintiff's inquiry, raises concerns regarding procedural fairness and the integrity of the proceedings.

11-C. Reservation of Additional ACS Escalation Details

- **[X]** Plaintiff reserves the right to supplement this Complaint with additional details regarding ACS escalation and emergency responses occurring in the days immediately preceding December 17, 2022.
- **[Y]** These events, while not fully set forth here, form part of the broader pattern of misconduct and will be detailed as discovery progresses.

12. ACS failed to provide Plaintiff with any visitation schedule, transportation assistance, or virtual visitation options following the removal.
13. ACS and Graham Windham failed to notify Plaintiff of service-plan meetings, permanency hearings, educational meetings, or any conferences related to the children's welfare.
14. Plaintiff was excluded from all decision-making regarding her children's education, medical care, mental-health treatment, and placement.
15. While in ACS custody, both children were diagnosed with ADHD and placed on psychiatric medication without Plaintiff's knowledge or consent, despite having no such diagnoses or behavioral issues while in Plaintiff's care.
16. Educational Regression of Minor Plaintiff S.A

- **[X]** While in ACS custody, minor Plaintiff S.A. experienced significant educational regression and instability.
- **[Y]** This included delayed graduation, disruptions in academic progress, and loss of continuity in his schooling.
- **[Z]** The regression documented during ACS custody reflects the broader harm caused by wrongful removal and prolonged separation from Plaintiff.
- **[AA]** These educational setbacks form part of the damages suffered by S.A. and directly support Plaintiff's claims of constitutional violations and systemic ACS and Graham Windham repeatedly used incorrect dates, incorrect addresses, and inaccurate statements in case records, including misreporting minor child S.A.'s graduation date and misidentifying Plaintiff's residence.

17. Reliance on Inaccurate Information in Court Filings

- **[X]** The City repeatedly relied on inaccurate information in its filings and orders.
- **[Y]** For example, the Temporary Order of Protection issued by Judge Karen I. Lupuloff contained the wrong date of birth for Plaintiff.
- **[Z]** This error, combined with prior misstatements of addresses and dates, demonstrates a pattern of careless and misleading filings.
- **[AA]** These errors caused delays, confusion, and prolonged separation between Plaintiff and her children.

- **[BB]** The reliance on inaccurate identifying information violated Plaintiff's due process rights and furthered the unlawful deprivation of familial association.

18. Arrest Based on Sealed and False ACS Information

- **[X]** In April 2023, Plaintiff was arrested based on ACS-generated information that was false, outdated, and fabricated.
- **[Y]** The information was derived from criminal allegations that had already been dismissed and sealed.
- **[Z]** Despite actual knowledge of the dismissals, ACS continued to circulate and rely upon sealed information.
- **[AA]** NYPD officers acted on this improper reliance, contributing directly to Plaintiff's unlawful arrest.
- **[BB]** This arrest prolonged Plaintiff's separation from her children and exemplifies the systemic misuse of invalid and sealed records to justify unlawful state action.

19. The April 2023 arrest lacked probable cause and was based on misrepresentations by ACS personnel

20. On July 26, 2023, members of the New York City Sheriff's Office forcibly entered Plaintiff's home and arrested her without probable cause. Deputies claimed there was an active Family Court warrant, but in fact the warrant had been vacated months earlier. The City of New York and the Sheriff's Office failed to maintain accurate and updated warrant records, directly resulting in the unlawful arrest and the use of excessive force against Plaintiff. This incident exemplifies the systemic reliance on invalid information and the execution of vacated warrants, causing Plaintiff severe trauma and further separation from her children.

21. The July 2023 arrest was based on incorrect information and false reports generated by ACS and relied upon in Family Court filings. Deputies came to Plaintiff's home claiming there was an active warrant, forcibly removed her, and transported her to court, where it was confirmed that the warrant had already been vacated months earlier.

22. During the July 2023 arrest, Sheriff's deputies used unnecessary force and contributed to Plaintiff's ongoing trauma.

23. In October 2023, NYPD officers again entered Plaintiff's home without a warrant, without consent, and without exigent circumstances.

24. The October 2023 arrest was also based on false or outdated information created or circulated by ACS.

25. Plaintiff suffered repeated unlawful entries, seizures, and arrests across multiple City agencies, demonstrating a pattern of coordinated misconduct.

26. Graham Windham attempted to "serve" Plaintiff with a Termination of Parental Rights (TPR) petition by placing sticky notes on her door while deliberately blocking her Ring camera.

27. Plaintiff was never personally served with the TPR petition and never received proper mailed notice.

28. Plaintiff did not receive any legally sufficient notice of the TPR proceedings, in violation of due-process requirements.

29. Plaintiff was deprived of the opportunity to participate in proceedings affecting her parental rights.

30. ACS and Graham Windham's actions were not isolated mistakes but part of a systemic pattern of administrative obstruction.

31. ACS repeatedly failed to provide Plaintiff with accurate information regarding her children's location, placement, education, and medical treatment.

32. ACS and Graham Windham failed to provide Plaintiff with any meaningful opportunity to maintain contact with her children.

33. Plaintiff's repeated attempts to obtain information, visitation, and participation were ignored or obstructed.

34. ACS's actions caused Plaintiff severe emotional distress, including depression, anxiety, and sleep disturbance.

35. Plaintiff was prescribed medication to treat depression resulting from the prolonged separation from her children and the trauma inflicted by Defendants.

36. Plaintiff's children suffered emotional trauma, behavioral changes, and instability as a result of ACS's actions.

37. The children were placed in multiple foster homes, causing further instability and emotional harm.

38. According to court records, the most recent foster parent informed ACS she no longer wanted the children due to "behavioral issues."

39. These behavioral issues did not exist prior to ACS involvement and were caused by the trauma of removal and instability.

   a. While in ACS custody, the children were exposed to inappropriate and unsafe environments, including access to explicit adult content on electronic devices .

   b. Plaintiff's son reported being physically assaulted by another child who did not reside in the foster home, demonstrating a lack of supervision and unsafe placement conditions.

   c. The same child threw Plaintiff's younger child's belongings out of a window, further evidencing instability, emotional harm, and the unsafe nature of the placement.

   d. These incidents occurred because ACS placed the children in environments that were not properly supervised, not properly vetted, and not appropriate for their safety or well-being.

e. These harms did not exist prior to ACS involvement and were a direct result of ACS's negligent placement decisions and failure to monitor the children's safety.

40. ACS and Graham Windham failed to provide Plaintiff with any updates regarding the children's educational progress, medical treatment, or mental-health status.

41. ACS and Graham Windham failed to provide Plaintiff with any documentation or explanation regarding the children's psychiatric diagnoses or medications.

42. ACS and Graham Windham failed to provide Plaintiff with any opportunity to participate in educational planning or medical decisions.

43. ACS's actions deprived Plaintiff of her fundamental right to family integrity.

44. ACS's actions deprived the children of their right to be raised by their mother.

45. The City's use of incorrect addresses and incorrect dates caused delays in court proceedings and prolonged the separation.

46. The City's errors also caused Plaintiff to miss critical deadlines and court appearances through no fault of her own.

47. The City's mishandling and diversion of survivor benefits contributed directly to Plaintiff's housing instability and the initiation of eviction proceedings.

48. Plaintiff's housing instability and the resulting eviction proceedings were direct consequences of the City's diversion or mishandling of benefits intended for the children. Plaintiff suffered financial hardship, emotional distress, and instability as a result of the City's actions.

49. The cumulative effect of these actions caused Plaintiff and her children severe emotional, psychological, educational, and familial harm.

50. These events collectively demonstrate a pattern of unconstitutional conduct by multiple City agencies acting jointly under color of state law.

51. Defendants knew, that the criminal charges against Plaintiff had been dismissed. Plaintiff submitted an Order to Show Cause in Family Court and provided documentation demonstrating that the criminal charges had been dismissed and terminated in her favor.

52. Despite being made aware of the dismissals, ACS attorney Swanter Polce subsequently referenced the charges before the Family Court without informing the court that the charges had been dismissed. Instead, Plaintiff alleges that the existence of the charges was presented in a misleading manner that omitted the fact of their dismissal.

53. Plaintiff further alleges that, after Plaintiff repeatedly sought relief through Orders to Show Cause concerning her children, ACS attorney Swanter Polce requested or encouraged the court to discourage Plaintiff from filing additional Orders to Show Cause, thereby interfering with Plaintiff's efforts to seek judicial review and relief regarding the custody, welfare, and placement of her children.

54. Defendants' continued reliance upon dismissed allegations, despite actual knowledge of their favorable termination, contributed to the ongoing deprivation of Plaintiff's parental rights, impaired Plaintiff's ability to obtain meaningful review of agency actions, and caused further emotional, financial, and familial harm.

55. These actions constitute additional evidence of deliberate indifference, procedural unfairness, bad faith, and reckless disregard for Plaintiffs' constitutional rights.

***DAMAGES***

1. As a direct and proximate result of Defendants' actions, Plaintiff suffered severe emotional distress, anxiety, depression, humiliation, embarrassment, fear, emotional anguish, and loss of enjoyment of life.
2. Plaintiff requires continuing medical and mental-health treatment, including prescribed medication for depression and sleep medication for insomnia, as a direct result of the trauma caused by Defendants' conduct and the prolonged separation from her children. These ongoing prescriptions demonstrate the lasting psychological harm and continuing medical needs directly attributable to Defendants' actions.
3. Plaintiff suffered financial losses, including housing instability, costs associated with court appearances, transportation expenses, communication expenses, and other out-of-pocket costs incurred while attempting to locate, communicate with, and advocate for her children.
4. Plaintiff suffered the loss of companionship, care, custody, management, guidance, affection, and society of her children.
5. The minor Plaintiffs suffered emotional trauma, psychological injury, educational disruption, instability, loss of normal childhood experiences, and deprivation of the care, companionship, and guidance of their mother.
6. Plaintiff was deprived of the opportunity to participate in important educational, medical, developmental, and family events involving her children, including milestones that cannot be recreated or replaced.
7. Plaintiff's reputation was harmed by false allegations, inaccurate reports, and the continued reliance on information that was misleading, inaccurate, or unsupported.
8. Plaintiffs have suffered damages that are continuing in nature and are expected to continue into the future, including emotional, psychological, educational, familial, and financial harm.
9. As a result of Defendants' conduct, Plaintiffs are entitled to compensatory damages, punitive damages against the individual defendants, costs, attorney's fees where permitted by law, and such other relief as the Court deems just and proper.

***<u>Relevant Case Law</u>***

- ***False Arrest***
  - *Manuel v. City of Joliet*, 580 U.S. 357 (2017) — false arrest claims under §1983.
  - *Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996) — arrest without probable cause violates the Fourth Amendment; all charges against Plaintiff were dismissed, confirming absence of probable cause.
- ***Excessive Force***
  - *Graham v. Connor*, 490 U.S. 386 (1989) — excessive force judged under "objective reasonableness."
  - Application: Dragging Plaintiff outside unclothed and handcuffing her was unreasonable and unconstitutional.
- ***ACS Liability***
  - *Southerland v. City of New York*, 680 F.3d 127 (2d Cir. 2012) — ACS liability for unlawful seizures/removals and unlawful entry.
  - *Tenenbaum v. Williams*, 193 F.3d 581 (2d Cir. 1999) — removing a child without a court order or exigent circumstances violates the Fourteenth Amendment right to family integrity.

- ***Unlawful Entry***
  - *Payton v. New York*, 445 U.S. 573 (1980) — warrantless entry into a home is unconstitutional absent exigent circumstances.
  - *Brigham City v. Stuart*, 547 U.S. 398 (2006) — exigent circumstances narrowly *defined.*
- ***Malicious Prosecution***
  - *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208 (2d Cir. 2000) — requires initiation of charges, lack of probable cause, malice, and favorable termination.
- ***Termination of Parental Rights***
  - *Santosky v. Kramer*, 455 U.S. 745 (1982) — requires clear and convincing evidence and full due process; Plaintiff was never served, notified, or given a hearing.
- ***Procedural Due Process***
  - *Mullane v. Central Hanover Bank*, 339 U.S. 306 (1950) — notice must be "reasonably calculated" to reach the person; sticky notes placed while blocking Plaintiff's Ring camera do not satisfy constitutional notice.
  - *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2001).
- **Emotional Distress Damages**
  - *Carey v. Piphus*, 435 U.S. 247 (1978) — emotional distress damages are recoverable under §1983 when constitutional rights are violated.
- ***Municipal Liability***
  - *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) — municipality liable when policies, customs, or failures to train cause constitutional violations. Plaintiff's injuries resulted from City-wide practices involving NYPD, ACS, EMS, and contracted foster agencies.
- ***Failure to Intervene***
  - *Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994).
- ***Conspiracy to Interfere***
  - *Griffin v. Breckenridge*, 403 U.S. 88 (1971).
- ***Failure to Prevent Conspiracy***
  - *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085 (2d Cir. 1993).
- ***Equal Protection***
  - *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

***CAUSES OF ACTION***

***COUNT I – Fourth Amendment: Unlawful Entry (42 U.S.C. § 1983)***

1. Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.

2. On December 17, 2022, ACS workers and NYPD officers entered Plaintiffs' home without a warrant, without consent, and without exigent circumstances.

3. The warrantless entry on December 17, 2022 violated Plaintiffs' clearly established rights under the Fourth Amendment.

4. In July 2023, members of the New York City Sheriff's Office forcibly entered Plaintiffs' home without a warrant, without consent, and without exigent circumstances.

5. The Sheriff's Office's warrantless entry in July 2023 violated Plaintiffs' clearly established Fourth Amendment rights.

6. In October 2023, NYPD officers again entered Plaintiffs' home without a warrant, without consent, and without exigent circumstances.

7. The October 2023 warrantless entry further violated Plaintiffs' clearly established Fourth Amendment rights.

8. All Defendants acted under color of state law when they unlawfully entered Plaintiffs' residence.

***COUNT II – Fourth Amendment: False Arrest and False Imprisonment (42 U.S.C. § 1983)***

1. Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.
2. On December 17, 2022, NYPD officers seized and arrested Plaintiff without probable cause.
3. In April 2023, Plaintiff was again arrested in connection with ACS-initiated matters, without probable cause and based on incorrect information.
4. In July 2023, members of the New York City Sheriff's Office seized and arrested Plaintiff without probable cause.
5. In October 2023, NYPD officers again seized and arrested Plaintiff without probable cause.
6. Each of these arrests constituted an unreasonable seizure under the Fourth Amendment.
7. Defendants lacked probable cause for each arrest and acted under color of state law.
8. Defendants' actions violated Plaintiff's clearly established rights to be free from unreasonable seizures, false arrest, and false imprisonment.
9. Plaintiffs suffered emotional, psychological, and familial harm as a result.

***COUNT III – Fourth Amendment: Excessive Force (42 U.S.C. § 1983)***

1. Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.
2. During the December 17, 2022 incident, NYPD officers used force against Plaintiff that was unnecessary and unreasonable.
3. During the April 2023 arrest, Defendants again used excessive force not justified by Plaintiff's conduct.
4. During the July 2023 arrest, Sheriff's deputies used force that was unnecessary and excessive.
5. During the October 2023 arrest, NYPD officers again used force against Plaintiff that was unnecessary and unreasonable.
6. EMS personnel attempted to administer an involuntary medical injection to Plaintiff without medical justification, consent, a court order, or any emergency condition.
7. Defendants' use of force caused Plaintiff physical pain, trauma, and emotional distress.
8. Defendants acted under color of state law at all relevant times.

***COUNT IV – Fourteenth Amendment: Procedural Due Process (Child Removal & Notice) (42 U.S.C. § 1983)***

1. Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.

2. ACS removed minor Plaintiffs S.A. and A.B.-A. without providing timely, accurate, or legally sufficient notice, and without providing immediate post-removal judicial review.

3. ACS and law enforcement Defendants repeatedly created, circulated, and relied upon false and inaccurate records—including arrest paperwork listing an incorrect date of birth for Plaintiff Camica Alley (September 2, 1985 instead of September 25, 1985)—depriving Plaintiffs of procedural due process and using unreliable administrative records to justify family separation and adverse legal proceedings.

4. ACS and Graham Windham failed to notify Plaintiff Alley of required case conferences, service-plan meetings, permanency hearings, and educational evaluations, denying her a meaningful opportunity to participate.

5. When the Termination of Parental Rights (TPR) petition was filed, Defendant Graham Windham attempted improper service by placing sticky notes on Plaintiff Alley's door while obscuring her Ring camera.

6. Plaintiff Alley was never personally served with valid process and never received proper mailed notice as required by law.

7. Defendants failed to provide notice reasonably calculated under the circumstances to inform Plaintiff Alley of proceedings directly affecting her fundamental parental rights.

8. As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiffs suffered the loss of parental rights, emotional trauma, educational regression, and ongoing deprivation of family integrity.

***COUNT V – Fourth & Fourteenth Amendments: Malicious Prosecution (42 U.S.C. § 1983)***

1. Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.

2. Defendants initiated criminal charges without probable cause, relying on false information created by ACS.

3. Defendants continued prosecutions even after allegations were shown to be unfounded.

4. The prosecutions arising from the December 17, April 2023, July 2023, and October 2023 arrests were initiated and maintained with malice.

5. Plaintiff was repeatedly arrested, detained, and forced to defend herself against baseless accusations.

6. The criminal proceedings terminated in Plaintiff's favor or lacked lawful basis.

7. Defendants acted under color of state law.

8. Plaintiffs suffered emotional, familial, and financial harm.

***COUNT VI – First Amendment Retaliation (42 U.S.C. § 1983)***

1. Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.

2. Plaintiff engaged in protected First Amendment activity when she called 911 to report the ACS worker's assault and misconduct, complained about NYPD and ACS actions, filed complaints and Orders to Show Cause in Family Court, challenged false allegations and incorrect information, attempted to participate in court proceedings, sought help from the courts to correct ACS errors, and asserted her rights during and after the December 17, 2022 incident.

3. Defendants retaliated against Plaintiff by arresting her three additional times without probable cause, relying on false or outdated information, escalating ACS involvement, prolonging the separation from her children, interfering with her ability to participate in Family Court, and discouraging her from filing further complaints or Orders to Show Cause.

4. The retaliatory arrests and actions would deter a person of ordinary firmness from exercising First Amendment rights.

5. Defendants' retaliatory conduct was a substantial and motivating factor in the adverse actions taken against Plaintiff.

6. Defendants acted under color of state law.

7. Plaintiffs suffered emotional, financial, reputational, and familial harm.

***COUNT VII – Municipal Liability (Monell) Against the City of New York (42 U.S.C. § 1983)***

1. Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.

2. The constitutional violations described were caused by policies, practices, or customs of the City of New York.

3. The City permitted ACS to create and circulate false information without oversight.

4. The City allowed NYPD and Sheriff personnel to conduct warrantless entries and arrests without probable cause.

5. The City failed to ensure Plaintiff received proper notice and accurate information.

6. The City failed to prevent the use of incorrect addresses, misdirected service, and address errors that prolonged separation.

7. The City allowed diversion or mishandling of survivor benefits intended for Plaintiff's children.

8. These failures contributed to eviction proceedings and housing instability for Plaintiff.

9. Defendants' misconduct continued into the federal litigation itself, where the City of New York attempted to coerce Plaintiff by threatening dismissal for allegedly failing to provide a Social Security number on a §160.50 release—despite the fact that such a requirement is not supported by statute or case law. Courts in this District have repeatedly held that §160.50 releases must be "executed," but do not require disclosure of information not provided at arrest, including Social Security numbers. See, e.g., ***Rodriguez v. City of New York, 2009 U.S. Dist. LEXIS 66393, at 12–13 (S.D.N.Y. July 31, 2009)***(discussing the purpose of §160.50 releases and the limits of what they may compel); ***CV-0350 (WAY), 2003 U.S. Dist. LEXIS 19303, at 2 (S.D.N.Y. Apr. 2003)*** (same).This conduct mirrors the same pattern of intimidation, misuse of authority, and reliance on incorrect information that ACS, NYPD, ESU, and the Sheriff's Office used throughout the underlying events. No matter how Defendants attempt to spin it or cover it up, their actions demonstrate a continuous pattern of coercive behavior designed to pressure Plaintiff, obstruct her access to justice, and retaliate against her for asserting her constitutional rights.

10.The City's policies, practices, and failures were the moving force behind the violations suffered by Plaintiffs.

***COUNT VIII – Fourteenth Amendment: Substantive Due Process (Family Integrity) (42 U.S.C. § 1983)***

1. Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.

2. ACS removed Plaintiff's children without a court order or exigent circumstances.

3. ACS and NYPD failed to investigate Plaintiff's report of assault.

4. ACS created and circulated false information used to justify removal and criminal charges.

5. Defendants interfered with Plaintiffs' ability to maintain family integrity, participate in education, and attend milestones.

6. Plaintiff suffered deprivation of her fundamental right to family integrity.

7. Defendants' conduct was arbitrary, conscience-shocking, and deliberately indifferent.

8. As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiffs have suffered severe and ongoing emotional trauma, mental anguish, physical distress, educational regression, financial loss, and the prolonged destruction of their family unit.

***COUNT IX – Failure to Train, Supervise, and Discipline (42 U.S.C. § 1983)***

1. Plaintiffs *repeat and re-allege all preceding paragraphs as thoug*h fully set forth herein.
2. The City of New York and supervisory personnel failed to adequately train employees regarding constitutional limits on seizures, use of force, medical interventions, and child removals.
3. ACS employees were not properly trained on lawful removal procedures and the prohibition on removals without court orders or exigent circumstances.
4. NYPD and Sheriff personnel were not properly trained on unlawful seizures, warrantless entries, arrests without probable cause, and reliance on false information.
5. EMS personnel attempted to administer an involuntary injection to Plaintiff without medical justification, consent, a court order, or any emergency condition, demonstrating a failure in training and supervision.
6. The City failed to train employees to verify information and avoid reliance on fabricated or inaccurate reports.
7. The City failed to discipline or retrain employees who engaged in unconstitutional conduct, including unlawful removals, false arrests, and attempted forced medical injections.
8. These failures in training, supervision, and discipline were widespread, persistent, and amounted to deliberate indifference to the constitutional rights of Plaintiffs.
9. As a direct and proximate result of these failures, Plaintiffs suffered violations of their Fourth and Fourteenth Amendment rights, including unlawful seizures, false arrests, attempted forced medical injection, and deprivation of family integrity.

***COUNT X – Fourteenth Amendment: Procedural Due Process (Notice & Parental Participation)***

1. Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.
2. ACS and Graham Windham deprived Plaintiff Camica Alley of procedural due process by repeatedly failing to provide adequate, timely, or legally sufficient notice of case conferences, court hearings, service plan reviews, permanency hearings, and educational evaluations.
3. Defendants systematically excluded Plaintiff Alley from proceedings directly affecting her fundamental parental rights and her minor children's welfare, in significant part by generating, circulating, and relying upon unverified and inaccurate personal identifying information—including an incorrect date of birth (listing September 2, 1985, instead of September 25, 1985) and improper service addresses.
4. Defendants failed to provide notice reasonably calculated under all the circumstances to inform Plaintiff Alley of pending administrative actions, educational decisions, medical interventions, and legal proceedings concerning minor Plaintiffs S.A. and A.B.-A.

5. As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiffs suffered severe emotional distress, educational regression, medical interference, loss of decision-making authority, and the ongoing deprivation of family integrity.

***COUNT XI – Civil Rights Conspiracy (42 U.S.C. § 1983)***

1. Plaintiffs repeat and re-allege all preceding paragraphs.
2. Defendants reached an agreement to deprive Plaintiffs of constitutional rights.
3. Overt acts included unlawful entry, false arrest, excessive force, attempted involuntary injection, denial of notice, misuse of addresses, and diversion of survivor benefits.
4. Plaintiffs suffered emotional, educational, financial, and familial harm.

***COUNT XII – Failure to Intervene (42 U.S.C. § 1983)***

1. Plaintiffs repeat and re-allege all preceding paragraphs.
2. Defendants had a realistic opportunity to intervene to prevent violations of Plaintiff's rights.
3. Defendants failed to intervene to stop unlawful entry, false arrest, excessive force, misuse of addresses, and diversion of benefits.
4. Plaintiffs suffered emotional, educational, and financial harm.

***COUNT XIII – Conspiracy to Interfere With Civil Rights (42 U.S.C. § 1985(3))***

1. Plaintiffs repeat and re-allege all preceding paragraphs.
2. Defendants conspired to deprive Plaintiffs of equal protection and equal privileges.
3. Overt acts included false information, warrantless entries, arrests without probable cause, denial of notice, misuse of addresses, and diversion of survivor benefits.
4. Plaintiffs suffered emotional distress, educational regression, financial harm, and deprivation of family integrity.

***COUNT XIV – Failure to Prevent Conspiracy (42 U.S.C. § 1986)***

1. Plaintiffs repeat and re-allege all preceding paragraphs.
2. Supervisory defendants knew of the conspiracy and had the power to prevent it.

3. They failed to act, allowing the violations to continue.
4. Plaintiffs suffered emotional, educational, financial, and familial harm.

***COUNT XV – Equal Protection (Fourteenth Amendment)***

1. Plaintiffs repeat and re-allege all preceding paragraphs.
2. Defendants intentionally treated Plaintiff differently from similarly situated individuals without rational basis.
3. Defendants relied on false information, denied notice, misused addresses, and diverted survivor benefits.
4. Plaintiffs suffered emotional distress, educational regression, financial harm, and deprivation of family integrity.

***COUNT XVI – Abuse of Process***

1. Plaintiffs repeat and re-allege all preceding paragraphs.
2. Defendants misused legal process to harass Plaintiff, justify unlawful removals, and support baseless arrests.
3. Defendants used incorrect addresses and defective service to delay proceedings and prolong separation.
4. Plaintiff suffered emotional distress, eviction proceedings, financial harm, and loss of parental rights.

***COUNT XVII – Intentional Infliction of Emotional Distress***

1. Plaintiffs repeat and re-allege all preceding paragraphs.
2. Defendants engaged in extreme and outrageous conduct, including unlawful entries, false arrests, excessive force, attempted involuntary injection, misuse of addresses, diversion of survivor benefits, and fabrication of information.
3. Defendants intended to cause or recklessly disregarded the likelihood of causing severe emotional distress.
4. Plaintiffs suffered severe emotional distress, trauma, educational regression, financial harm, and disruption of family integrity.

***COUNT XVIII – Negligence and Gross Negligence***

1. Plaintiffs repeat and re-allege all preceding paragraphs.
2. Defendants owed Plaintiffs a duty to act with reasonable care.
3. Defendants breached this duty by relying on false information, conducting warrantless entries, initiating baseless arrests, attempting forced injection, using incorrect addresses, failing to provide notice, and mishandling survivor benefits.
4. Defendants' conduct was negligent, reckless, and grossly negligent.
5. Plaintiff suffered financial harm, eviction proceedings, loss of parental rights, and emotional distress.

***COUNT XIX – Prima Facie Tort***

1. Plaintiffs repeat and re-allege all preceding paragraphs.
2. Defendants intentionally engaged in conduct motivated solely or primarily to harm Plaintiffs.
3. Defendants circulated false information, initiated baseless investigations, executed warrantless entries, attempted involuntary injection, used incorrect addresses, diverted survivor benefits, and contributed to eviction proceedings and educational harm.
4. Defendants' conduct was malicious, willful, and without lawful excuse.
5. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered severe emotional distress, financial harm, housing instability, educational regression, loss of parental rights, reputational damage, and the continued deprivation of family integrity.

***COUNT XX – Deprivation of Property Without Due Process & Trespass / Conversion***

1. Plaintiffs repeat and re-allege all preceding paragraphs as though fully set forth herein.
2. Defendants, acting under color of state law, intentionally or recklessly caused physical damage to Plaintiff's real and personal property during unlawful entries into Plaintiff's home.
3. Defendants executed these actions without a warrant, without consent, without exigent circumstances, and without providing pre- or post-deprivation due process or just compensation.
4. Under New York State law, Defendants' unauthorized entry and destruction of property constitutes trespass and conversion. Defendants, acting under color of state law, intentionally or recklessly caused physical damage to and destruction of Plaintiff Alley's real and personal property during unlawful entries into Plaintiff's home, including but not limited to removing the front entrance door of her residence, destroying her cellular phone , and damaging her personal attire and household items.
5. As a direct result of Defendants' conduct, Plaintiff suffered pecuniary loss, destruction of personal property, and out-of-pocket expenses for repair and replacement.

***PRESERVATION OF EVIDENCE***

***Plaintiff requests preservation of all evidence relating to the incidents and events described herein, including but not limited to body-worn camera footage, radio transmissions, CAD reports, Sprint reports, DD-5 reports, aided reports, arrest paperwork, complaint reports, EMS records, ambulance records, hospital records, ACS case files, ACS progress notes, SCR records, photographs, video recordings, Ring camera recordings, Family Court filings, court transcripts, Sheriff's Office records, Graham Windham records, visitation records, permanency records, service plan records, emails, text messages, electronic communications, disciplinary records, supervisory reviews, investigative files, and all electronically stored information. This request extends to all categories of evidence, whether known or unknown to Plaintiff at this time.***

***PRAYER FOR RELIEF***

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in plaintiff's favor and against Defendants as follows:

a. Compensatory damages in an amount to be determined at trial for physical injury, property damage and loss, emotional distress, pain and suffering, humiliation, loss of liberty, reputational harm, and the intentional destruction of family integrity
b. Punitive damages against the individual Defendants for their willful, malicious, reckless, and unconstitutional conduct.

c. Declaratory relief stating that Defendants' actions violated Plaintiff's rights under the Fourth and Fourteenth Amendments, including her fundamental right to family integrity.

d. Injunctive relief requiring the City of New York, ACS, and their contracted agencies to cease all unconstitutional practices related to warrantless home entries, unlawful removals, false reporting, and failure to provide due process in child-welfare matters.

e. An order directing the City of New York and ACS to immediately restore Plaintiff's full parental rights and custody of her children, or in the alternative,
a declaration that the removal and continued separation were unconstitutional, thereby requiring the City to take corrective action consistent with federal law.

f. Expungement and Oversight Relief An order directing the City of New York, ACS, and related agencies to expunge or prohibit reliance on false, outdated, or sealed records in Family Court proceedings, including ACS reports and filings that misrepresented Plaintiff's circumstances. In addition, requiring the implementation of oversight measures such as independent monitoring or mandatory training to ensure compliance with constitutional requirements in child welfare and law enforcement practices.

g. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

h. Such other and further relief as the Court deems just and proper.

***JURY DEMAND***

**Plaintiff demands a trial by jury on all issues so triable.**

**VERIFICATION**

**I, Camica Alley, declare under penalty of perjury that I am the Plaintiff in the above-entitled action; that I have read the foregoing Amended Complaint; and that the facts stated therein are true and correct to the best of my knowledge, information, and belief. Dated:** 8/31/2026

**Camica Alley**

**1899 Crotona Avenue, Apt. 4I**

**Bronx, NY 10457**

**(929) 737 3445**

**micaframe@yahoo.com**